My name is Wayne Young. I represent the habeas petitioner Medley. Mr. Medley was convicted of murder. His direct appeals were denied in state court. He raised two issues in his federal habeas petitions that are at issue here. The first one was whether he made a sufficient showing to get an evidentiary hearing on the issue of whether his attorney deliberately deceived him into not testifying. And the second issue is whether the jury instructions impermissibly took away from the jury the issue of whether a flare was designed as a weapon and was therefore a firearm. The second issue is a state law issue. We can't get into that, can we? I disagree, Your Honor. Fundamental law from in re windshift and on is that every element of a crime must be proven beyond a reasonable doubt. An element of the statute, if you begin with the statute, an element of the crime is that a firearm is any device designed to be used as a weapon from which is expelled through an explosion. OK, but the interpretation of the statute is a matter of state law, is it not? Well, that's a state statute here. It is a state statute. And you get into that issue from McMillan v. Pennsylvania. It's been discussed by the Supreme Court in numerous cases. The state gets to define the statute. In fact, to expand on that just briefly, we have a California Supreme Court decision that encourages ineffective assistance for failure to challenge it. But how can you raise that claim when in essence, in order to do that, you're asking us to say that the instruction is insufficient, contrary to the California Supreme Court's interpretation of its own statute? I don't believe, and perhaps I'm wrong, that there's a California Supreme Court case that says that designed to be used as a weapon language has no meaning or doesn't apply in this case. If you look at the statute, it defines a firearm, a device designed to be used as a weapon that acts through an explosive mechanism. There's no dispute that this acts through an explosive mechanism. But what the trial court did is took away from the jury the issue of whether it's designed to be used as a weapon. And a flare is something that falls right into that. A flare is generally designed to be used as a warning device. It was used as a weapon. But the question that was not, there was no testimony to the effect of whether it was designed to be used as a weapon. I don't believe there are any cases that specifically hold what you're saying, Your Honor. There is the Runyon case that's in a court of appeals decision that says it's okay in the case of a firearm, a handgun, to take that question away from the jury. If you have something that is clearly a firearm, a handgun, in reading the language in Runyon, it says, quote, when it's here, the gun appears to be a traditional firearm. There is no need for the court to instruct the jury more expansively. So if you have a gun, you can say, as the court did here, the word firearm includes a handgun. But when you have something that is ambiguous about whether or not it's a firearm, then you have to use the entire language of the instruction, which includes any device to be used as a weapon. And there was no testimony that it was designed to be used as a weapon. And therefore, an element of the crime was not presented to the jury. It was taken away from them. And that's the argument on that point. The first certified issue is, was there a sufficient showing to warrant an evidentiary hearing? And what he alleged is that his attorney deliberately deceived him into not testifying. Not a case in which, you know, I wanted to testify, but we disagreed, and he brings it up later. He's saying, his attorney told him at that crucial conference, right at the end of the people's case, okay, you can testify. I don't think it's a good idea, but you can testify. But we'll wait until after the hearing on the motion to dismiss. They had the motion to dismiss, and there was no result. The judge held his ruling in advance. And you have to my point here is that the record generally supports the sequence of events. We don't know exactly what was said between counsel and his client. But the record generally supports the sequence of events, because on July 5th, is when the break took place in which there was this off-the-record conference between counsel and defendant. And according to my client, he says, counsel said you can testify after the hearing on the motion to dismiss. Well, they have the hearing on July 5th, the court holds the ruling in advance. They come back the next day, July 6th, outside the presence of the jury, and the court grants the motion to dismiss on the other counts. The next time they come to court is July 10th for closing arguments. And during closing arguments, that was the first time, according to my client, that he had, now that the motion to dismiss has been granted, it's my first opportunity to testify according to my counsel's advice. And as soon as, during closing arguments, he brings up to the court that he wanted to testify. Okay, but you're now here in federal court, and the question for us, is it not, is where is the federal constitutional violation with respect to the way in which the California courts interpret Strickland? Because Strickland controls here, right? Well, Strickland and more recently Williams v. Taylor and Miller v. Elv versus Cockrell, which are cases which hold that as a matter of federal constitutional law, what you have to do is to get an evidentiary hearing. We're not asking here for reversal. We're just asking for the evidentiary hearing, and Irv v. Stokes as well. Well, you're asking for a habeas, aren't you? We're asking for an evidentiary hearing on our habeas claim in the federal court. Ultimately, we want to prevail on the issue of ineffective assistance of counsel. But really, the narrow issue is, should he have been granted an evidentiary hearing? He's saying, my counsel, deliberately discerning. Discerning in front of the district judge here. Yes, sir. He asked for an evidentiary. Well, that's another dispute, is the fact of filling out on a court-approved, this is the point that the magistrate made that was affirmed by the district court, the habeas petition was filled out on a form that's required for pro se petitioners. And there's no place on there to request an evidentiary hearing. But he alleged specifically that his attorney deceived him. Aren't you required under the habeas statute to have, as a predicate, to have established that evidential record in the state court? Under the federal habeas statute? Yes, your honor. And we believe he did by alleging in detail in his declaration attached to his habeas petition that my attorney deliberately deceived me. That's a colorable claim. But don't you have to, in other words, don't you have to request the evidential hearing? Of course, they can deny it to you and you can say, then you can then raise the issue in federal court. They should not have denied it to me. But don't you have to ask for the evidential hearing in state court on habeas and present the record? Here's the discussion privately between counsel and defendant and the trickery and have the state court rule, yes, there was trickery, or rule, no, there was trickery, and then ask the federal court to say that was just clear error, that was wrong. Under the federal statute, that finding does not have sufficient support under the standards stated in the federal statute. I agree with all of that except the very first part, that you have to explicitly say the words, I want an evidentiary hearing. Because you require... No, but you have to establish an evidential record. You can't ask for it for the first time in your federal habeas. And he did, Your Honor, in his habeas petitions, he alleged with specificity that my attorney deceived me. You say in his habeas petitions, you mean in this court? No, in the state courts. In the state courts, okay. In all three habeas petitions. All right, and did the court rule with respect to those contentions? None, arguably, in the Supreme Court. The state superior court said he's seeking a second appeal. It's an ineffective assistance of counsel claim. You generally bring those by way. So I think that is a meaningless answer. The state appellate court, the court of appeal, denied. The state Supreme Court denied it with string citations to Duval and Swain, which to my way of thinking, when he has made a specific claim with specific facts alleged, that fits within that category of cases in which the state court made insufficient findings that really are entitled to any deference. The court didn't say, other than to cite In re Duval, that it's an inadequate statement. But if you look at the affidavits, and there's three of them, they state with specificity, my attorney tricked me. And what takes this beyond the realm of the cases that often come up, in which there is counsel or the client saying, you know, I wanted to testify. I guess we had a miscommunication. He's taking this another step. He's saying my attorney lied to me. He deceived me. And the record is consistent with his claim. It doesn't prove it, because what happened in that conversation, that's off the record. We need to hear from trial counsel what happened. But the record is consistent with his claim, because my client's alleging, you have to wait till after the hearing on the 1018 motion before you get to testify. And the first time he came to court, after that issue was decided, he asked the court, he told the court, I had wanted to testify. So he did bring it to the, what you have to do is bring it to the court, the trial court, in a timely manner. And in the circumstances of this case, that was his first opportunity to do that. If it's true that his trial counsel said you have to wait till after the hearing on the motion to dismiss, but that makes sense, because that would affect the scope of his testimony. So he asked for an evidentiary hearing in state court. Yes. He didn't say the words evidentiary hearing, but he filled out the petition that is required by proper petitioners in state court in detail and attached an affidavit, attached supporting facts, all of which said, my attorney deceived me and here's how it happened. And the record is generally consistent with that. Isn't there an inconsistency in the record in the colloquy that's cited between defendant and the court, state court, at the later hearing? He says, defendant says, I sort of wanted to get up on the stand a while ago, but everything was going so quick. I guess I was waiting for that thing you guys were doing. He doesn't say my attorney said I could testify later. He says, I was waiting for that thing you guys were going to do. When I came back, everybody said I couldn't get on the stand. Well, what do you mean? You wanted to testify? I did want to, and he sort of told me. He didn't really want me to, and I sort of did. In other words, there is inconsistent record on which the state court could have relied. This sort of language, there's no statement here, he tricked me. He told me I could testify, but I had to wait. There's no statement like that on the record. So the record is inconsistent with the factual scenario that you're suggesting, that is the declaration of the defendant to the contrary. When he's saying I was sort of waiting for that thing for you guys to decide, he's talking about the 1018 motion to dismiss. So that's consistent with his later claim, more specific in his declarations, that my attorney told me you have to wait to determine the scope of your testimony until after the hearing to dismiss. So that part's consistent. Now, I do agree with you, Judge Jones, that the words I sort of aren't as strong as perhaps I would like, but ultimately it is to some extent, not directly, but it is to some extent inconsistent with the statement that my attorney told me I could testify later. But he also says in other points during that colloquy, no, that's not exactly true. He's cut off at one point on page 24 of the excerpt of record. The judge says, I have no doubt that he explained to you the pros and cons of testimony. He said, yes, he did, but, and the court stepped in. So if you read the whole colloquy, it's a defendant without advice of counsel. Counsel's there, but they're, at this point, they're in conflict. Telling the court, I wanted to testify, and I waited as I was instructed to do by my attorney, and now you're telling me I can't testify. And he brought it to the court at the first available opportunity, which was when, during closing arguments. All he could have done better is to have brought it to the attention. Now, you have one other problem. I mean, if you're right, of course, that's pretty serious error. But the other question, of course, is prejudice. And there was an obvious reason why his counsel at the time was advising him not to take the stand. And it's clear what he would have faced if he had taken the stand. So there is a secondary question, and that's the prejudice. Well, that's a puzzling issue to me. I think there's a difference between the prejudice you have to show to get ineffective assistance of counsel, because it's well-established that the court can go right to prejudice and not even figure out whether or not counsel was ineffective. And if you're only asking for an evidentiary hearing, the standard is lower. The language that is used in the cases for whether you get the evidentiary hearing is a colorable claim. And that's less than prejudice. So I believe all he had to show was a colorable claim that his attorney deceived him to get the evidentiary hearing. Now, when we have the evidentiary hearing, we do revert to the point, on the basis of that record, he's going to have to show prejudice. But apart from that, there is also, I believe, if it's an intentional deception. Now you're moving into the area of structural error, intentional deprivation of the right to counsel. There are very few things that are inherently prejudicial, but denial of the right to counsel is one. And if your attorney deceived you, Bell v. Cone suggests that right to counsel is one of those few structural errors. In order to get that, or even to get the evidentiary hearing, you've got to have some showing. You've got to have some showing. My attorney said, you can testify later. Well, we have that showing in the habeas petitions. And we also have it in the colloquy. But it's contradicted by the colloquy between defendant and state court judge. Well, it's certainly consistent in the colloquy when he says, I'm waiting for you guys to decide that thing. And it's clear that he's talking about the 1018 motion. And he also says, I wanted to testify. And there is that language about sort of. But if you read the whole colloquy, I think it's a defendant who sees his right to testify going to be deprived. And he's saying, yeah, I wanted to testify. Counsel, you're down about four minutes. Am I reserved? I have nothing further. I'll reserve it. Thank you. We'll hear from the state. Good morning, your honors. May it please the court, Robert Foster, deputy attorney general for the warden and the respondent. Judge Nelson, to answer your question, no, he never asked in state court in any of his three habeas petitions for an evidentiary hearing. Now, counsel says, well, he just filled out the form the state gave him. No, that's not fully accurate. Yes, he filled out the form. But he went on to attach page after page of very sophisticated legal material. If you look at it for a pro se, it's remarkably good. He went on and on about what had happened, what should be the result. And at no time in any of those affidavits did he ever ask for an evidentiary hearing. It is not implicit. He had the opportunity on three different occasions and never did. And I think the district judge got it right. Williams v. Taylor says, at the minimum, you must ask for an evidentiary hearing in state court. He didn't do that. And I would suggest to them that that's the end of the analysis under Williams v. Taylor. Is it conceivable that the state court might have acted on these forms in any way? Conceivable, yes, your honor. We see cases on a daily basis where prisoners send in this form filled out, which generates either A, a request for the attorney general's office to respond in either an informal response where the issuance of an order to show cause and evidentiary hearing and formal briefing. So this is not some perfunctory document that is turned down. Indeed, I just finished a lengthy hearing on one in a state court that was submitted on the same form and in the same manner. Did that respond to your question? Well, maybe step one. Step two is what happened with respect to, I think you said he filled out three separate forms? One for the California Superior Court. Right. One for the California Court of Appeal. Okay. And one for the California Supreme Court. All right. So these were before those respective courts? Yes. And did the court make a ruling with respect to these? Yes, it was. As counsel said during his argument, they were, the first one in the Superior Court was denied on the basis in a procedural ground that he was seeking a second appeal. Okay. The second one was denied by the California Court of Appeal with no comment. The third was denied by the California Supreme Court with a citation to the cases saying he had. They've all been ruled upon. They've all been ruled upon. Yes, Your Honor. You look puzzled. Have I left you confused about what happened? I'm just wondering whether that gives the plaintiff, the petitioner, an argument that yes, there is something in the record now that. But not ruled on. Well, he never asked for it. So how can you, how can you say it wasn't ruled upon when he never asked for it? And it was never asked for and therefore it was never ruled upon, I think would be the response. No, I, I grant you, there was no request for an evidentiary hearing apparently. There was not. But I'm just wondering whether or not there might have been a ruling which would be sufficient to establish some evidentiary basis in the record. In other words, what you're saying is that it's not enough to say in the petition, my attorney never opened a law book. You've got, you need to say that, but you need to also establish an evidential record. Yes, Your Honor. Yes, Your Honor. And all he, all he did here was to submit his own self-serving affidavit. And as we pointed out to you in California. That does not constitute the record or a record. No, that, that does not constitute a sufficient record. He needed to have an affidavit from his attorney, an affidavit from someone who was aware of this at the time what was going on, an affidavit from defense counsel. There were a myriad of things he could have done, but he did not do so. And that would not entitle him now to an evidentiary hearing in the federal district court. And I think counsel today says, well, all I needed to show was a colorable claim in order to get an evidentiary hearing in the district court. And I would submit to you that is erroneous. If this, this court in a case called Baha versus Duchesne, which we cited in the briefs, said that, look, EDPA was designed to make it harder to get an evidentiary hearing in federal court. Well, if you go back and look, the last time this court pre-EDPA, pre-EDPA, talked about evidentiary hearings, it was in the Seropon's death penalty case. And in that case, you said if there was a colorable claim and a failure to develop in state court, you'd get one in federal court. Well, that's what counsel's arguing. He's saying, we had a colorable claim, it wasn't developed in state court, we should be able to bring it now. That contradicts this court's holding in Baha, which said, no, EDPA makes the standard higher. He's trying to get you to go back to the pre-EDPA standard and to ignore EDPA. And that, this court should not do that. As to the flare gun issue, I agree with Judge O'Scanlan, this is a state court issue. It's a question of how. O'Scanlan was just raising the question. Well, I'm sorry, Your Honor. The tone of your voice led me astray. I apologize. I agree with the, we would argue that it is clearly a matter of state law. This is a legal question of what, under California law, constitutes a weapon. It's a matter of state law. Judge Jones, you referred to the California Supreme Court decision, I think you were referring to the Brown case, which was my case at the California Supreme Court. And in that case, the question was whether a Garden Grove Reserve officer was a peace officer within the meaning of California statute. And the claim was made, no, you've made a, you've taken the issue from the jury, you've given them a directed verdict. And the California Supreme Court said, no, under California law, all we're doing is defining what is a peace officer. The jury still has to decide whether the defendant killed a peace officer with knowledge of the fact he was a peace officer. The same thing is true here. There was expert testimony, an excerpt of the record 276, that the flare gun worked by an explosion, propelling something out the barrel. And it's still left to the jury to decide whether or not there'd been a killing, and whether the, had done so intentionally and personally. It didn't take the elements away. The jury still had to make all those findings. So it's clearly a matter of state law, and even if it's not, there's no violation of due process. Unless the court had any questions. Can I ask a question about his claim of structural error, that his defense would have been completely different if he'd been allowed to testify? I mean, assuming, then we would get to the question of prejudice and impeachment and so forth. Well, yes, Your Honor. But his claim of self-defense, that he could have put on a completely different defense, and therefore that amounts to structural error. Well, first off, structural error was never raised below, and I don't think it's proper to now raise it for the first time on appeal. Number two, he's right in that, yes, it would have been different. The trial would have been, his defense would have been savaged if he testified. Defense counsel meticulously laid out this theory that some other dude did it. So the defendant's going to take the stand and go, well, some other dude did it, but if it was me, it was self-defense. On top of that, the defendant was going to be impeached with two prior convictions, one for rape, one for corporeal injury. And, if the trial judge had ruled, he could be impeached with his belief in the occult and the fact that the victim had been sent to him by God as a servant. So I think you have to say, the test is, even assuming arguendo, the counsel misled him, and he should have testified. You can look at this record and go, it would have butchered the breast of the defense. It would have put him in a horribly inconsistent position in front of the jury. And there's no possible harm by him not testifying. The harm would have been had he testified. So I don't think it's structural error at all. The question was ineffective assistance of counsel. It's always been phrased in that terms in the state court and in the federal district court. It's never been alluded to as structural error, and I don't think it is. Are you suggesting that all we have to do is find no prejudice and don't have to reach the other issues? Well, Strickland, of course, says that oftentimes an IAC claim is most easily resolved by going to no prejudice, and you certainly could do that in this case. I think that would be up to this panel's determination. Unless the Court has any other questions, we would submit. No further questions. Thank you, Your Honor. Mr. Young, you have some reserved time. Thank you, Your Honor. The first point is on the requirement of requesting an evidentiary hearing. I don't believe California law requires you to specifically request one. In the Supreme Court law, Williams v. Taylor says simply pursue an evidentiary hearing in the manner required in state court. And if the state court provides these forms and there's no place to check on it, you want an evidentiary hearing, and you allege with sufficient specificity that some constitutional violation, that constitutes the request for an evidentiary hearing. And there are no other cases, to my knowledge, holding otherwise. He followed the procedures required of him by the forms. On the question of whether the affidavit was sufficient, it's very detailed about how his attorney deceived him, and it complies with the record. Our position is that's sufficient. You don't, at this point, to get an evidentiary hearing, have to attach the affidavit of counsel. There is some statement in Duval, the state Supreme Court case, that you have to attach the transcripts. But he specifically put a footnote in his request, there's a prison policy against attaching transcripts, so I can't do it here. So that affidavit, assuming that what's in it is sufficient to allege a constitutional violation, that is sufficient to get you the evidentiary hearing. And I think Irk V. Stokes, case Judge Nelson, participated in, says what you have to do is make a colorable claim when you're pursuing the habeas petition. And that's a colorable claim with specific supporting facts. That case was pre-ed book, was it not? I don't believe it was, Your Honor. It was decided last year. It's a 2004 case. I can't say for sure. Now, on the Brown case that Mr. Foster brought up, about the peace officer, I agree with that. Because the question there is, is this policeman a peace officer, meaning California law? Same thing with the Runyon case I talked about. Is a handgun, it's clearly a firearm. But when you have something that's not clearly a firearm, and you go, we've always heard, you go to the language of the statute first. A device designed to be used as a weapon. That's in the statute. So I agree that the court can remove the question of whether something is designed to be used as a weapon if you have something that's clearly a firearm. When you have something, that's the purpose of the statute. When you're not sure, a pellet gun perhaps, is it designed to be used as a weapon? But a flare designed for something else, then that's an element of the crime. And the last point I want to make is, the other defense in trial, there was something to a self-defense argument here. Counsel didn't really make some other dude did it defense. If you read the transcript, it's really not clear. He was defending it the best he could. But there is evidence in the record that there was an ongoing dispute between the victim and my client that had intensified over time. That comes from the girlfriend. So there is friction between these two. And what my client alleged is that it was the other person who started the fight. Right. He had the flare gun and shot it at him. Now, who knows? But my point is that there is something in the record to support either a claim of self-defense or a claim of heat of passion, sudden quarrel. So that gets to the prejudice. But I think what you need to show to get an evidentiary hand, which is all we're asking for at this point, is a colorable claim, which he did, and facts which support it, which there are. Thank you. Thank you, counsel. The case just argued will be submitted for decision and the court will adjourn.
judges: Dw Nelson, O'scannlain, Jones